IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-89-245-CV





FLOYD G. SLENTZ AND HELEN SLENTZ,



 APPELLANTS


vs.





AMERICAN AIRLINES, INC., J. J. SECURITY, INC.,


AND MARY FINAU,




 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 425,784, HONORABLE VIRGIL MULANAX, JUDGE PRESIDING



 




 Appellants ask this Court to recognize a new right of
action. They assert that an implied warranty of safe carriage
emanates from a provider of air transportation services to its
passengers. (1) They argue that, as a matter of public policy, the
law should impose this implied warranty upon common carriers to
protect travelers. Appellants acknowledge that no statute creates
these obligations and that no court in Texas or elsewhere has
created or recognized the warranty at common law. For the reasons
stated below, we decline appellants' invitation to be the first
court to do so. We affirm the judgment of the trial court.

 Appellants Floyd and Helen Slentz (the Slentzes) sued
appellees American Airlines (American), J. J. Security, and Mary
Finau, alleging that Floyd was injured when he was knocked down in
the Dallas/Fort Worth Airport by an electric passenger cart owned
by American Airlines, operated under contract by J. J. Security,
and driven by its employee, Mary Finau. The Slentzes sued
American, J. J. Security, and Finau, alleging acts of negligence
and gross negligence. In addition, they sought to recover from
American on theories of breach of contract, breach of implied
warranties, and violation of the Texas Deceptive Trade Practices--Consumer Protection Act based on the breach of implied warranties. 
See Tex. Bus. & Com. Code Ann. §§ 17.41 et seq. (1987 & Supp. 1991)
(DTPA).



Background

 On December 23, 1985, the Slentzes flew on an American
Airlines plane from Oakland, California, to the Dallas/Fort Worth
Airport, where they were to change planes in the American terminal. 
While walking to their assigned gate, Floyd Slentz, ninety-two
years old, became separated from his wife. The Slentzes charged
that, with the cart she was driving, Finau hit either Floyd or the
bag of gifts he was carrying, causing him to fall. The injuries he
suffered when he fell required a partial hip replacement.

 Among their claims, the Slentzes sought recovery under
the DTPA for American's alleged breach of its implied warranty of
safe carriage. A breach of an implied warranty may give rise to a
DTPA claim even though the DTPA does not create any warranties. La
Sara Grain v. First Nat'l Bank, 673 S.W.2d 558, 565 (Tex. 1984);
DTPA § 17.50(a)(2); Alderman & Rosenthal, A Consumer Update: Recent
Developments Under the Texas Deceptive Trade Practices Act, 20 St.
Mary's L.J. 495, 509 (1989). The Slentzes alleged that by agreeing
to transport them American impliedly warranted, but failed, to do
the following:



1. Safely carry or transport appellants to their
destination;


2. Render special care and assistance necessary to
ensure the safety of appellants;


3. Maintain its equipment and facilities in a safe
condition suitable for appellants to occupy while
awaiting transportation to their final destination;


4. Protect appellants from dangers and abuse caused by
others; and


5. Exercise that high degree of care and diligence
which it owes to its passengers for their safety.


American specially excepted to these allegations on the ground that
Texas law does not recognize, in a common carrier/passenger
relationship, the implied warranties the Slentzes urged. The trial
court sustained the special exceptions and struck those portions of
appellants' petition alleging breach of implied warranties and
violation of the DTPA. Nevertheless, inquiries on these issues
were submitted to the jury.

 The jury failed to find that any party was negligent and
refused to find that American had acted in a manner that violated
any of the standards of safe carriage earlier enumerated. Based on
this verdict, the trial court rendered a take-nothing judgment
against the Slentzes and overruled their motion for new trial.

 


Implied Warranty of Safe Carriage

 In their first two points of error, the Slentzes attack
the trial court's actions granting American's special exceptions,
striking the excepted portions of the Slentzes' pleadings, and
denying the Slentzes an opportunity to amend. The trial court has
broad discretion in ruling on special exceptions, and the ruling
will not be disturbed on appeal absent an abuse of discretion
resulting in harm. Davis v. Quality Pest Control, 641 S.W.2d 324,
328 (Tex. App. 1982, writ ref'd n.r.e.) 

 The Slentzes complain that the trial court erred by
sustaining American's special exceptions. They argue that
compelling public policy reasons exist for extending the theory of
implied warranty recognized in other performance contracts to a
provider of air transportation services. See Melody Home Mfg. Co.
v. Barnes, 741 S.W.2d 349, 352-54 (Tex. 1987); Kriendler, Aviation
Accident Law § 3.03 (1987). Although appellants contend that an implied warranty of safe carriage exists under Texas law, they
acknowledge that no Texas court has ever discussed or recognized
it. (2) Instead, the law has long held that a common carrier is not
an insurer of the safety of its passengers but owes them that high
degree of care that a very cautious, prudent, and competent person
would use under the same or similar circumstances. City of Dallas
v. Jackson, 450 S.W.2d 62, 63 (Tex. 1970); Delta Airlines, Inc. v.
Gibson, 550 S.W.2d 310, 312 (Tex. Civ. App. 1977, writ ref'd
n.r.e.). We cannot say that the trial court abused its discretion
by basing its ruling on existing law. 

 The Slentzes further complain that the trial court erred
in striking their pleadings without giving them an opportunity to
amend. Appellants' argument assumes the trial court denied them
the opportunity to amend their pleadings. The trial court did not
prevent them from exercising their right to amend, however, and
they had time to do so as the trial was not set until several weeks
after the hearing. Appellants amended their petition to add a new
claim for recovery at the time of the hearing on American's
exceptions and twice thereafter, but before trial, filed
supplemental pleadings. Appellants do not invite our attention to
any instance in which the trial court denied leave to amend.

 The Slentzes' position is generally correct; a party
should usually have an opportunity to amend a defective pleading. 
See State v. Houdaille Industries, 632 S.W.2d 723, 724 (Tex. 1982). 
This is unnecessary, however, if the pleading defect is of a type
that amendment cannot cure. James v. Hitchcock Indep. School
Dist., 742 S.W.2d 701, 704 (Tex. App. 1987, writ den.); Geochem
Laboratories, Inc. v. Brown & Ruth Laboratories, Inc., 689 S.W.2d
288, 290 (Tex. App. 1985, writ ref'd n.r.e.); Jacobs v. Cude, 641
S.W.2d 258, 261 (Tex. App. 1982, writ ref'd n.r.e.). The crux of
the Slentzes' complaint is that, for the first time, Texas should
impose upon common carriers an implied warranty of safe carriage
and should recognize a cause of action for its breach. Their
pleadings were stricken because, under existing law, relief could not be granted on the cause asserted. Theirs was not a defect they
could cure by amendment. Indeed, on appeal they do not suggest any
different manner of stating their action but instead urge us to
adopt their stricken allegations as the law.

 Finally, error resulting from the trial court's ruling,
if any, is not reversible because appellants cannot show that they
suffered any resulting harm. Despite its pretrial ruling, the
trial court admitted evidence on the issues and submitted questions
to the jury concerning American's performance of each implied
warranty, but the jury failed to find that American had acted
negligently or breached any duty allegedly warranted. Even
assuming appellants should have been permitted to plead an action
for breach of the implied warranty of safe carriage, based on the
stricken pleadings and the jury's verdict, the same judgment would
have been rendered. In this instance, the trial court's submission
of the charge cured any error. Appellants failed to convince the
jury that American violated the standards appellants sought to
impose. Therefore, appellants have not shown that any trial court
error caused the rendition of an improper judgment. See Tex. R.
App. P. Ann. 81(b)(1) (Pamph. 1991). Because on this record we
must uphold the trial court's judgment, we need not decide whether
Texas recognizes an implied warranty of safe carriage. We overrule
points of error one and two.



The Slentzes' Remaining Point of Error

 In their third point of error, appellants state:


The trial court erred in overruling plaintiffs' motion
for new trial, because the negligence of Mary Finau,
J. J. Security and American Airlines that proximately
caused the occurrence in question and Floyd and Helen
Slentz' damages (with the exception of their damages
relating to their move from the cooperative apartment to
the condominium), and attorneys' fees on appeal, were (A)
established as a matter of law or (B) the jury's answers
to the appropriate questions in the court's charge were
against the great weight and preponderance of the
evidence, so as to be manifestly unjust. 



 The appellants complain of the trial court's failure to
grant them a new trial. The trial court enjoys broad discretion in
ruling upon a motion for new trial. Champion Int'l Corp. v.
Twelfth Court of Appeals, 762 S.W.2d 898, 899 (Tex. 1988). The
trial court's decision will not be disturbed on appeal absent a
clear showing of an abuse of discretion. Strackbein v. Prewitt,
671 S.W.2d 37, 38 (Tex. 1984). Appellants have not made such a
showing here. 

 To show that the trial court erred by not granting them
a new trial, appellants complain that the evidence established
appellees' negligence. They direct us to thirty-eight jury answers
in response to parts of eight different questions inquiring about
a variety of issues including both negligence and breach of
warranty, as well as proximate cause, damages, and attorney's fees. 
To the extent they attempt in a single point to complain about the
legal and factual sufficiency of the evidence to support multiple
grounds of recovery, the point is multifarious. Clancy v. Zale
Corp., 705 S.W.2d 820, 823 (Tex. App. 1986, writ ref'd n.r.e.);
Tex. R. App. P. Ann. 74(d) (Pamph. 1991). To the extent their
complaint relates only to recovery for alleged negligence, their
argument fails.

 The Slentzes, of course, had the burden of proof on these
issues. Where a party has the burden to prove a fact, no
affirmative evidence is required to support its nonexistence or to
permit a negative finding on the issue. Traylor v. Goulding, 497
S.W.2d 944, 945 (Tex. 1973); Bell v. Buddies Super-Market, 516
S.W.2d 447, 451-52 (Tex. Civ. App. 1974, writ ref'd n.r.e.). In
reviewing a legal sufficiency point complaining that the jury
failed to find a fact, the court first will consider only evidence
and reasonable inferences drawn from that evidence in the light
most favorable to the verdict, disregarding all evidence and
inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965). We may sustain the challenge only if, after examining
all the evidence, we determine that there is no probative evidence
to support the verdict and further find that appellants established
the contrary as a matter of law. Holley v. Watts, 629 S.W.2d 694,
696 (Tex. 1982). We may sustain a point of error challenging the
factual sufficiency of the evidence supporting a non-finding only
if, after considering all the evidence, we determine that the
jury's answer is so against the great weight and preponderance of
the evidence as to be clearly wrong and manifestly unjust. In re
King's Estate, 244 S.W.2d 660 (Tex. 1951); see Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.
Rev. 361 (1960).

 The jury was asked whether appellees were negligent and
whether American committed any of the acts appellants alleged; as
to each inquiry, it answered "no." Proof concerning the facts was
disputed, and the record contains probative evidence from which the
jury could have declined to find facts imposing liability on
appellees. 

 Briefly, the record reveals that Floyd Slentz was
ninety-two years old at the time of the accident. He suffered from
a variety of medical conditions that affected his steadiness and
ability to walk. At the time of the accident, Floyd suffered from
high blood pressure, angina, blockage of the neck arteries, chronic
dizziness and intense pressure in his head, degeneration of the
dorsal spine, cataracts, glaucoma, degeneration of the retina,
hearing loss, and periods of difficulty with tandem walking, i.e,
sometimes when he wanted to walk forward, he would instead step
from side to side. There also was evidence that, by the time of
the accident, Floyd had a history of serious falls: at different
times, he had injured his left buttock and his right hip, cut his
left hand, and broken his right hand. 

 The incident occurred on one of the airline's busiest
days of the year. The terminal was very crowded, and people
hurrying past him pushed and bumped Floyd as he walked. At the
time of the accident, Floyd was carrying a bulky bag of Christmas
presents and personal items; he was not using a cane.

 In addition, the record contains evidence that Mary Finau
looked around her before starting her cart, applied her horn, drove
slowly, and yelled at people in the terminal to get out of her way. 
There was evidence that she knew how to drive and that she had been
trained in her duties by J. J. Security's predecessor. Although
Floyd's testimony suggested a "face to face" confrontation in which
he was struck by the front of the cart as it came toward him, an
eyewitness seated nearby had a different version. He testified
that, just before the accident, the cart had stopped beyond Floyd
to let people on and off; Floyd stood facing the cart near its
right rear wheel. Finau started the cart and drove forward. The
witness did not know whether Floyd may have been hit by the rear of
the cart as it started or fell trying to move away. Floyd was on
the floor behind and to the right of the cart immediately after he
fell. 

 Applying the proper standards of review, we find that the
evidence was legally and factually sufficient to support the
challenged jury findings. Accordingly, the trial court did not
abuse its discretion in overruling the Slentzes' motion for a new
trial. We overrule the third point of error.

 Because we have overruled all of the Slentzes' points of
error, we need not address American's cross-point. The judgment of
the trial court is affirmed.



 

 Marilyn Aboussie, Justice

[Before Justices Gammage, Carroll and Aboussie; Justice Gammage

 not participating]

Affirmed

Filed: August 14, 1991

[Publish]
1. Appellants enumerate several obligations, but for
purposes of discussion we will refer to them collectively as the
implied warranty of safe carriage.
2. See also Southwestern Bell Tel. Corp. v. DeLanney, 809
S.W.2d 493 (Tex. 1991).